**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION** FILED: JULY 16, 2008
                                        08CV4033
                                        JUDGE ASPEN
                                        MAGISTRATE JUDGE ASHMAN

| | |
|---|---|
| **JAMES PLONSKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** PH_____ |
| ) | |
| **NATIONAL ASSET RECOVERY** ) | **(Removal from Cook County Circuit** |
| **SERVICES, INC. and GREG CAPPA** ) | **Court, Case No. 2008L006302)** |
| ) | |
| **Defendants.** ) | |

**DEFENDANT'S NOTICE OF REMOVAL**

**TO:   THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

COME NOW Defendants, National Asset Recovery Services, Inc. ("NARS") and

Gregory Cappa ("CAPPA"), by and through their undersigned counsel, pursuant to 28 U.S.C.

§§1332, 1441 and 1446, respectfully submit this Notice of Removal of this civil action, entitled

*Plonsker v. National Asset Recovery Services, Inc. and Greg Cappa,* Cause No. 2008L006302

("the Lawsuit"), from the Circuit Court of Cook County, State of Illinois, to the United States

District Court for the Northern District of Illinois. In support thereof, Defendant respectfully

states to this honorable Court as follows:

1.      On June 9, 2008, Plaintiff filed his Complaint commencing the Lawsuit.

2.      On June 19, 2008, Plaintiff served on Defendant NARS, a copy of the Summons

and Complaint.

3.      Plaintiff has not yet served Defendant CAPPA; however, Defendant CAPPA

otherwise received notice of this action on June 19, 2008 as well.

4.    A copy of the Complaint and the Summons in the Lawsuit are attached hereto and constitute all process, pleadings and orders served on Defendant NARS and of which Defendant CAPPA has become aware.  (Exhibit A, Complaint and Summons).

5.    The Lawsuit is a civil action stated in four (4) Counts as follows.  Count I (Conversion) alleges that Defendants intentionally converted assets belonging to Plaintiff by willfully denying to Plaintiff earned but not yet due commissions, thereby depriving him of personal property, i.e. commissions.  Count II (Fraud in the Inducement) alleges that Defendants fraudulently induced Plaintiff into entering an Employment Agreement with Defendant NARS while knowingly never intending to be bound by the Employment Agreement and never intending to make payments thereunder.  Count III alleges a Breach of Contract against Plaintiff by reason of Defendants having allegedly breached the commission payment provisions contained in an Employment Agreement entered into between Defendant NARS and Plaintiff. Count IV (Accounting) seeks an accounting for all sums due and owing as might be determined from a review of the books and records of Defendant NARS.

6.    The Lawsuit at issue is one in which this Court has original jurisdiction under the provisions of 28 U.S.C. §1332 and is one that may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. §1441 (a) – it is a civil action in which there is complete diversity of citizenship between Plaintiff and Defendants and the matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

7.    Plaintiff is a resident of the State of Illinois.  (Exhibit A, ¶ 1).

8.    Defendant NARS, the former employer of Plaintiff, is a Missouri corporation, Corporate Charter Number 00387659.

9.      NARS' corporate headquarters and principal place of business is located in Chesterfield, Missouri which is located in St. Louis County, Missouri.

10.      Defendant CAPPA, is an employee and officer of Defendant NARS, is domiciled in St. Louis County Missouri, has his principal place of business at Defendant NARS' corporate headquarters located in Chesterfield, Missouri which is located in St. Louis County, Missouri. Defendant CAPPA is currently a resident of St. Louis County, Missouri.

11.      Plaintiff alleges to have suffered lost commission revenue as the result of alleged tortious acts and breaches of contract performed by Defendants and has alleged that the matter in controversy exceeds the sum or value of $600,000.    (Exhibit A, ¶¶10, 14 and the *ad damnum* paragraphs of Counts I, II and III)

12.      The Summons and Complaint were formally received by Defendant NARS on June 19, 2008 with notice of the filing of the Lawsuit having been received by Defendant NARS on the same day.

13.      Although Defendant CAPPA has yet to be served, he became aware of the Summons and Complaint that was served by Plaintiff on Defendant NARS on June 19, 2008.

14.      Both Defendants specifically consent to filing this Notice of Removal.

15.      Accordingly, this Notice of Removal has been filed within thirty (30) days of receipt by Defendants of Plaintiff's Summons and Complaint or otherwise becoming aware of this action, and, therefore, is timely filed.

16.      This Notice of Removal is accompanied by written notice to Plaintiff.

17.      A copy of this Notice of Removal has been filed with the Clerk of the Circuit Court of Cook County, State of Illinois, on this date as required by 28 U.S.C. §1446(d), and is attached hereto as Exhibit B.

18.     By reason of filing this Notice of Removal, Defendant CAPPA does not specifically consent to jurisdiction or waive service but files this Notice to preserve his rights and ability to remove this matter.

WHEREFORE, Defendant provides Notice of Removal of the above-styled action pending in the Clerk of the Circuit Court of the Cook County, State of Illinois to the United States District Court for the Northern District of Illinois.

Respectfully submitted,

Dated:  July 16, 2008

**NATIONAL ASSET RECOVERY SERVICES,
INC. and GREG CAPPA**

/s/Stanley G. Schroeder
THE LOWENBAUM PARTNERSHIP
Stanley G. Schroeder, app. Pending
William L. Lawson, app. Pending
222 South Central Avenue, Suite 901
St. Louis, Missouri 63105
Main (314) 863-0092
Direct (314) 746-4835
Fax (314) 746-4848 (facsimile)
sschroeder@lowenbaumlaw.com
wlawson@lowenbaumlaw.com

/s/Donald J. Vogel
SCOPELITIS, GARVIN, LIGHT, HANSON &
FEARY, P.C.
Donald J. Vogel, ARDC # 6191438
Sara L. Pettinger, ARDC # 6204647
30 West Monroe Street, Suite 600
Chicago, Illinois 60603
Main (312) 255-7200
Direct (312) 255-7178
Fax (312) 422-1224
dvogel@scopelitis.com

*Attorneys for Defendants National Asset Recovery
Services, Inc. and Greg Cappa*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this  16th day of July, 2008 served a true and correct copy of the foregoing by depositing the same with the United States Postal Service, first class, postage prepaid, upon the following addressed as follows:


Tracy E. Stevenson
Andrés J. Gallegos
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602

*Attorneys for Plaintiff*


/s/Donald J. Vogel

08CV4033
JUDGE ASPEN
MAGISTRATE JUDGE ASHMAN

PH

# EXHIBIT A



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

BZT / ALL
Transmittal Number: 5852649
Date Processed: 06/19/2008

| | |
|---|---|
| Primary Contact: | Ms. Christine L. Cervellere<br>National Asset Recovery Services, Inc.<br>16253 Swingley Ridge Road<br>Suite 300<br>Saint Louis, MO 63017 |
| Copy of transmittal only provided to: | Gregory Cappa<br>Vincent Ko |

| | |
|---|---|
| Entity: | National Asset Recovery Services, Inc.<br>Entity ID Number  2215759 |
| Entity Served: | National Asset Recovery Services, Inc. |
| Title of Action: | James Plonsker vs. National Asset Recovery Services, Inc. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court: | Cook  Circuit  Court, Illinois |
| Case Number: | 2008L006302 |
| Jurisdiction Served: | Delaware |
| Date Served on CSC: | 06/19/2008 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Tracy E. Stevenson<br>312-782-9000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | CCG N001-10M-1-07-05 (        ) |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, _____LAW_____ DIVISION**

(Name all parties)

JAMES PLONSKER, an individual

v.

National Asset Recovery Services, Inc. and Greg Cappa

}

2008L006302
CALENDAR/ROOM N
TIME 00:00
No. Breach of Contract

PLEASE SERVE:
National Asset Recovery Services, Inc.
c/o Lexis Document Services, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE 19808

**SUMMONS**

To each Defendant:

   YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

   ☑ Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

| ☐ **District 2 - Skokie** | ☐ **District 3 - Rolling Meadows** | ☐ **District 4 - Maywood** |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview** | ☐ **District 6 - Markham** | ☐ **Child Support** |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

   This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, _____ JUN -9 2008 _____

Atty. No.: 80919

Name: Tracy E. Stevenson/Robbins, Salomon & Patt, Ltd.

Atty. for: Plaintiff

Address: 25 E. Washington Street, Suite 1000

City/State/Zip: Chicago, IL 60602

Telephone: 312-782-9000

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

_____
(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| JAMES PLONSKER, an individual, | ) | 2008L006302 |
| | ) | CALENDAR/ROOM N |
| Plaintiff, | ) | TIME 00:00 |
| | ) | Breach of Contract |
| vs. | ) | No. _____ |
| | ) | |
| NATIONAL ASSET RECOVERY | ) | Plaintiff Demands Trial by Jury |
| SERVICES, INC., an Illinois corporation, | ) | |
| and GREG CAPPA, individually, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT AT LAW

Now comes the Plaintiff, James Plonsker (hereafter "Plonsker"), by his attorneys, Robbins,

Salomon & Patt, Ltd., and for his complaint at law, states as follows:

#### The Parties

1.     Plaintiff herein is an Illinois resident and a former employee of National Asset

Recovery Services Inc. (hereafter NARS).

2.     NARS is a Missouri corporation duly registered to conduct business in the state of

Illinois including Cook County, Illinois.

3.     Greg Cappa, is a principle of NARS, doing business in Illinois and upon information

and belief residing in Missouri.

#### COUNT I - Conversion

1.     On October 3, 2005, the Plaintiff and Defendant entered into a written employment

agreement.  Under its terms, Defendant agreed to employ Plaintiff as a Vice President, Sales.

2.    The effective date of employment was October 10, 2005. Plonsker was an at-will employee drawing a base salary of $100,000 with additional commissions and benefits as set forth within the contract. A true and correct copy of the Employment Agreement is attached as Ex A.

3.    Neither Defendant NARS nor CAPPA issued written warnings or otherwise advise Plaintiff of any deficiency in his job performance pursuant to the terms of contract.

4.    Plaintiff through his obligations to the Defendant, caused Defendants revenues to rise substantially, brought in revenues higher than any other Vice President, Sales, earned the highest commissions due to his job performance, and brought to NARS its largest account ever.

5.    Despite Plaintiff's compliance with job requirements, on May 1, 2008, the Defendants wrongfully and without just cause, and outside the terms of the employment agreement, discharged the Plaintiff.

6.    In discharging Plaintiff, Defendants intentionally converted assets belonging to the plaintiff into assets of the Corporation in that Defendant willfully denied Plaintiff his earned but not yet due commissions, thus depriving Plaintiff to his personal property (the commissions) in direct violation of public policy.

7.    Since that time, Defendants have prevented Plaintiff from performing Plaintiff's part of the agreement, although Plaintiff has duly tendered his services to the Defendants and has been, and still is, ready and willing to perform the services according to the employment agreement.

8.    Defendants actions in discharging Plaintiff were solely for the purpose of taking the property of Plaintiff and converting said property to that of the Defendant.

9.    Under the terms of the employment agreement, Plaintiff herein is due earned vacation time in the amount two weeks for his first year and three weeks of vacation for each following

BI1971
06/06/08

2

twelve-month period, 401(K) Plan vested benefits, and ongoing health and general employee benefits as described in the NARS Employee Manual as well as his earned commission and salary.

WHEREFORE, the Plaintiff herein, James Plonsker, prays for judgment in his favor and against Defendant, National Asset Recovery Services, Inc., an amount in excess of the $50,000.00 jurisdictional amounts plus punitive damages.

## COUNT II - Fraud in the Inducement

Pleading in the alternative, pursuant to Section 2-613 of the Illinois Code of Civil Procedure, and further complains of the Defendants as follows:

1.    Plaintiff herein entered into an employment agreement with NARS on October 3, 2005.

2.    Plaintiff reviewed the agreement and accepted the agreement by signing the employment agreement where indicated on October 12, 2005.

3.    Pursuant to the written agreement signed by Plaintiff, the Plaintiff was to receive salary and commissions for his sales efforts as Vice President, Sales.

4.    The commissions set forth in the employment agreement provide for the earning of commissions subsequent to the signing of contracts by clients for a three-year period commencing on the date the client signs the contract.

5.    Prior to the execution of the agreement, NARS, through its agents and representatives, specifically, Greg Cappa, represented and warranted that it would abide by the terms of the employment agreement including the payment of commissions for three years following the entry of any contracts with clients.

6.    Plaintiff herein relied on NARS' and Cappa's representation in entering into the aforesaid employment agreement and in accepting the compensation and commission package as written.

7.    NARS and its employees and agents failed to sign the employment agreement and failed to permit the client, Charter Ltd., from entering into a contract of sufficient duration to allow payment of commission through the third year of each contract and, instead, intentionally knowingly misrepresented that the commissions would be paid for three years and intentionally limited the duration of contracts with clients so as to prohibit the payment of commissions as they became due.

8.    NARS and Cappa's misrepresentations were intentional and knowing and were intended to defraud Plonsker by inducing Plonsker to enter into an employment agreement and compensation and commission package which NARS and Cappa knew it would not deliver and knew it would not execute nor be bound by the terms therein.

9.    NARS and Cappa failed to properly pay commissions to Plonsker for a three-year period of time following the execution by Charter, Ltd. of a contract with NARS, limited the duration of the Charter, Ltd. contract so as to prevent payment throughout the commission period set forth in the employment agreement and intentionally failed to execute the employment agreement so as to raise the defense that NARS and its agent Cappa were not bound by the terms therein.

10.    Due to Defendants' intentional and knowing actions to defraud, Plonsker entered into the employment agreement but was not paid out the relevant commissions owed pursuant to said agreement and thus has suffered damages in excess of $600,000 related to commissions which NARS refuses to pay.

BI1971
06/06/08

4

WHEREFORE, Plaintiff herein, James Plonsker, prays for judgment against NARS and Cappa in excess of $600,000.00 plus costs and punitive damages in the amount of $800,000.00.

## COUNT III - Breach of Contract

1.      On October 3, 2005, the Plaintiff and Defendant entered into a written employment agreement.  Under its terms, Defendant agreed to employ Plaintiff as a Vice President, Sales.

2.      The effective date of employment was October 10, 2005.  Plonsker was an at-will employee drawing a base salary of $100,000 with additional commissions and benefits as set forth within the contract.  A true and correct copy of the Employment Agreement is attached as Ex. A. Plonsker performed all conditions of the contract.

3.      Cappa was at all relevant times Plaintiff's superior and the individual who handled Plaintiff's contracts after a client had executed an agreement.

4.      At all relevant times, Plaintiff was engaged in the business of a Vice President, Sales, under which a portion of the contract related to commission for sales efforts as follows:

Sales Commission

NARS will pay a sales commission on all new business contracted according to the following schedule:

- Four (4%) percent of total revenue for year one
- Two (2%) percent of total revenue for year two
- One (1%) percent of total revenue for year three

After three years of operation each contracted program becomes a house account. Commission Period:

For the purposes of commission payment, year one will commence with the actual start of services for each program.  Commission will not be paid on training revenue [other than Plonsker's training revenue from Panama].

Definition Of New Business Vs. Ramp Up

All new business requiring an agreement or a separate addendum, schedule, or statement of work shall be considered new business for commission purposes. All business that is governed under an existing agreement, addendum, schedule, or statement of work is considered ramping and subject to the commission arrangements of the original document.

Ongoing Commission For Sales Involving CEO/EVP/SVP

Any sales contracted by sales personnel from leads provided by the CEO, EVP or SVP of Sales will be paid at 50% of existing annual commission values. For any new sales opportunity from a salesperson's existing account, that is closed by the CEO/EVP/SVP, the salesperson will be paid a commission of 50% of the annual rates.

On October 12, 2005, Plaintiff and Defendant entered into a written agreement by which Defendant agreed to give Plaintiff various commissions for those sales he brought into the company.

5.     By the terms of the agreement, Defendant agreed to pay Plaintiff as compensation for his services, a certain commission based upon the percentage of the revenue produced. As a result of the employment agreement, Plaintiff herein procured various contracts for proposals issued to potential clients for which said commissions were to become due.

6.     All commissions are earned at the time a customer executes a contract.

7.     On or about May 1, 2008, Plaintiff herein was wrongfully discharged from employment for which earned commissions are now due and owing or will become due and owing in the future, although already earned.

8.     At all times herein, the employment agreement included a sales commission pursuant to Missouri Statute.

9.     At all relevant times there was a statute in effect noting that nothing in the statute shall be construed to impair a sales representative from collecting commissions on products or services ordered prior to the termination of the contract between the principal and the sales

representative, but delivered and accepted by the purchaser after such termination. See Missouri Statute, § 407.912(2).

10.    Further, at all times herein, a Missouri Statute, pursuant to § 407.912(3), states that when a contract between a sales representative and a principal is terminated, all commissions then due shall be paid within 30 days of such termination. Any and all commissions which become due after the date of such termination shall be paid within 30 days of becoming due.

11.    At all times herein, Plaintiff was retained by Defendant to be a finder of business and bring the business into Defendant.

12.    Plaintiff did find a client for Defendants herein to the express term of his contract. The contract is silent as to the number of clients a finder of business must accrue in a given term.

13.    Defendant breached its contractual duties to Plaintiff by wilfully failing to abide by the terms of the employment agreement in various ways including but not limited to the following:

    a.    Discharged Plaintiff in order to convert Plaintiff's commission for itself;

    b.    intentionally withheld commissions due and owing to Plaintiff;

    c.    intentionally and wrongfully devised policy outside of the written agreement in order to convert Plaintiff's commissions for the benefit of Defendant;

    d.    Intentionally failed to advise Plaintiff of his pending termination;

    e.    Knowingly and intentionally failing to give an accounting to Plaintiff for monies due despite demand for same;

    f.    Otherwise breached the express terms of the employment contract.

14.    As a direct result of Defendants breaches, Plaintiff is due and owing salaries, benefits and commissions in excess of $600,000. Plaintiff has performed all of the acts to be done by him pursuant to the terms of the employment agreement.

WHEREFORE, the Plaintiff herein, James Plonsker, prays for judgment in his favor and against Defendant, National Asset Recovery Services, Inc., in the amount of $600,000 plus interest and damages for wilful conduct as this court deems just.

## COUNT IV - Accounting

15.    Plaintiff herein incorporates and alleges by reference paragraphs 1-14 above as and for paragraph 15 of this Count as if set forth fully herein.

16.    A determination of the propriety of the sums due and owing must be determined from a review of the books and records of Defendant.

17.    Plaintiff has requested an accounting and Defendant has refused.

18.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays this Honorable Court order that an accounting be taken for purposes of establishing the accuracy of the amounts due Plaintiff as a result of the wrongful actions of Defendant.

Respectfully submitted,

Tracy E. Stevenson, One of the Attorneys for Plaintiff

## SUPREME COURT RULE 222 CERTIFICATION

Tracy E. Stevenson, does hereby depose, certify, and state as follows:

1.      I am one of the attorneys for the Plaintiff in the instant case.

2.      I have conducted a reasonable investigation and assessment of the damages, and this certification is based upon that investigation.

3.      The total of money damages sought in the above-entitled action does exceed $50,000.

4.      If called upon to testify, I would and could competently do so as to the matters set forth herein.

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this Certification are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Dated: _____

_____
TRACY E. STEVENSON

Tracy E. Stevenson
Robbins, Salomon & Patt, Ltd.
Attorneys for Plaintiff
25 East Washington Street, Suite 1000
Chicago, IL   60602
312-782-9000
#80919

BI1971
05/29/08

7

## EMPLOYMENT AGREEMENT

This Agreement, dated and effective this 3rd day of October, 2005, is hereby entered into between National Asset Recovery Services, Inc. ("NARS") and James Plonsker ("Plonsker"). NARS and **Plonsker** hereby agree as follows:

1.  Term of Employment. **Plonsker** is being employed in the position of Vice President, Sales. Effective Date of employment is October 10, 2005. Nothing in this Agreement shall change the at-will status of **Plonsker**'s employment. Accordingly, **Plonsker**'s employment may be terminated at any time, with or without cause, by either the Company or **Plonsker**.

    Compensation. For his services to be performed hereunder, NARS shall pay **Plonsker**'s base salary of $100,000, payable in installments not less frequently than twice per month, less deductions and withholdings as required by law. NARS will pay to **Plonsker** a $25,000.00 draw against Commissions in **Plonsker**'s first year of employment, to be paid out in monthly installments for twelve (12) months.

    Commissions. **Plonsker** shall receive the following commission for his sales efforts:

    (a) Four percent (4%) of all revenue produced in the first year of each contract for contracts signed during the six months of his employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker**'s first year of employment.

    (b) Two percent (2%) of all revenue produced during the second year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker**'s first year of employment.

    (c) One percent (1%) of all revenue produced during the third year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker**'s first year of employment.

    (d) To qualify for this consideration, both **Plonsker** and NARS must certify the legitimacy of all proposals issued during the first six months of his employment.

    (e) After the initial six months of employment, **Plonsker**'s commission plan will be consistent with the NARS sales commission plan currently under review.

2.  Benefits. During the term of this Agreement, **Plonsker** shall be entitled to the following benefits:



PLAINTIFF'S
EXHIBIT

_A_

(a) <u>Vacation:</u> **Plonsker** will earn two (2) weeks vacation per 12-month period until two years of employment. After two years of employment **Plonsker** will earn three (3) weeks of vacation per 12-month period.

(b) <u>401k:</u> **Plonsker** will be eligible to participate in NARS 401k plan after 12 months of employment.

(c) <u>Other Benefits:</u> **Plonsker** will receive other Health and general employee benefits as described in the NARS' employee manual.

5.    <u>Relocation.</u>    Relocation is not a requirement of this position.

6.    <u>Drug Testing.</u> **Plonsker** shall be required to undergo random drug testing. Failure to cooperate in any required drug test or a positive result shall be grounds for the termination of this Agreement, further any finding of drug-use other than prescribed by a physician, possession, sale, control, attempt to sell or any other use of drugs other than prescribed by a physician shall be grounds for termination.

7.    <u>Indemnification and Hold Harmless.</u> **Plonsker** declares that any non-compete agreements that **Plonsker** may have signed with other companies, do not prohibit his ability to provide services under this Agreement. This Agreement shall terminate immediately, if it is determined by NARS or any judicial body, that any non-compete agreement signed by **Plonsker** prohibits him from performing services under this Agreement. In addition, **Plonsker** agrees to indemnify and hold harmless NARS, its officers, directors, shareholders, employees and other representatives ("Indemnified Parties") from all losses, claims, damages, liabilities, penalties, costs, and attorneys fees incurred by an Indemnified Party resulting from reliance on **Plonsker's** declaration that any non-compete agreement signed by **Plonsker** is unenforceable for the work performed under this Agreement.

8.    <u>Non Solicitation of Employees.</u> **Plonsker** agree that while he is employed by NARS and for a period of one (1) years after termination of his employment for any reason, with or without cause, he will not directly or indirectly hire, or attempt to hire, any employee of NARS nor will he encourage any employee of NARS to terminate employment with NARS.

9.    <u>Protection of NARS' Confidential Information.</u> **Plonsker** shall keep confidential, use solely for his duties hereunder and not, directly or indirectly, disclose at any time during or for a period of one (1) year following the termination of his employment, any confidential or proprietary information about the business and affairs of NARS without the express written permission of NARS. Confidential or proprietary information is deemed to be methods of operation unique to NARS, customers and customer lists unique to NARS, prices and details of contracts with customers, consultants, suppliers or employees, business management methods,

marketing plans, forecasts, or other specialized information relating to the business of NARS and which is unique to NARS and not commonly known in the industry.

10.   Nonsolicitation.   For a period of one (1) year following termination of his employment, **Plonsker** agrees not to solicit, directly or indirectly, the business of any NARS client that was an established NARS client as of the date **Plonsker** commenced his employment or that was acquired as a client during the period of **Plonsker**'s employment.   To this end, **Plonsker**'s covenants and affirmatively represents that should his employment with NARS end for any reason; he will not remove, retain, or otherwise possess, actually or constructively, any NARS customer list or customer information of any kind.

11.   Specific Enforcement. **Plonsker** agrees that any breach of Paragraphs 6 through 9 hereof will cause NARS irreparable harm for which NARS will have no adequate remedy at law.   Accordingly, **Plonsker** agrees that NARS may, in addition to any other remedies available in law or equity, have specific performance of the terms contained in Paragraphs 8 through 11 of this Agreement in any court having jurisdiction.

12.   Severability.   If any provision of this Agreement is held invalid, such invalidity shall not affect the other provisions of this Agreement which shall be given effect independently of the invalid provisions; and, in such circumstances, the invalid provision is severable.

13.   Governing Law.   This Agreement shall be construed in accordance with the laws of the State of Missouri.

14.   Successors and Assigns.   The rights and obligations of NARS under this Agreement shall inure to the benefit of its successors and assigns.   This Agreement, being personal to **Plonsker**, cannot be assigned by **Plonsker**, but his personal representative shall be bound by all its terms and conditions.

15.   Amendments, Etc.   No modifications, amendments, extensions, or waivers of this Agreement or any provisions hereof shall be binding upon NARS or **Plonsker** unless in writing and signed by NARS' President.

16.   Complete Agreement.   This Agreement shall constitute the entire agreement and understandings between NARS and **Plonsker** and shall supersede and replace all prior and contemporaneous agreements and understandings, written and oral. This should not be mistaken for a contract of employment for a specific duration of time. **Plonsker**'s employment is at-will and terminable by either **Plonsker** or NARS at any time.

IN WITNESS WHEREOF, the parties have signed this Agreement effective as of the day and year first above written.

NATIONAL ASSET RECOVERY
SERVICES, INC.

Signature: _____

Date: ___10/12/2005___

By: James E. Quinn_____

Signature: _____

Date: _____

175111 1

08CV4033
JUDGE ASPEN
MAGISTRATE JUDGE ASHMAN

PH

# EXHIBIT B

Firm Id. #35986

## IN THE CIRCUIT COURT OF THE COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| **JAMES PLONSKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2008L006302** |
| **NATIONAL ASSET RECOVERY** | ) | |
| **SERVICES, INC. and GREG CAPPA** | ) | |
| | ) | |
| **Defendants.** | ) | |

### NOTICE TO CLERK OF REMOVAL

TO:  Dorothy Brown
     Cook County Circuit Court
     Richard J. Daley Center, Room 1001
     50 West Washington Street
     Chicago, Illinois 60602

     **PLEASE TAKE NOTICE** that Defendants, National Asset Recovery Services, Inc. and Greg Cappa, have this date filed a Notice of Removal on this case in the United States District Court for the Northern District of Illinois.    In accordance with 28 U.S.C. § 1446, the Notice of Removal has caused this matter to be removed from this Honorable Court to the United States District Court for the Northern District of Illinois.  This Notice includes copies of the Notice of Removal and Notice to Plaintiff of Removal as attachments.

Respectfully submitted,

**NATIONAL ASSET RECOVERY
SERVICES, INC.**

Donald J. Vogel
Sara L. Pettinger
Scopelitis, Garvin, Light, Hanson & Feary, PC
30 West Monroe Street, Suite 600
Chicago, Illinois 60603
Main (312) 255-7200
Direct (312) 255-7178
Fax (312) 422-1224
dvogel@scopelitis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of July, 2008 served a true and correct copy of the foregoing by depositing the same with the United States Postal Service, first class, postage prepaid, upon the following addressed as follows:

Tracy E. Stevenson
Andrés J. Gallegos
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602

*Attorneys for Plaintiffs*

Firm Id. 35986

## IN THE CIRCUIT COURT OF THE COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| **JAMES PLONSKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2008L006302** |
| **NATIONAL ASSET RECOVERY** | ) | |
| **SERVICES, INC. and GREG CAPPA** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>NOTICE TO PLAINTIFF OF REMOVAL</u>

TO:    Tracy E. Stevenson
       Andres J. Gallegos
       Robbins, Salomon & Patt, Ltd.
       25 East Washington Street, Suite 1000
       Chicago, IL 60602

PLEASE TAKE NOTICE that Defendant, National Asset Recovery Services, Inc., has this date filed a Notice of Removal on this case in the United States District Court for the Northern District of Illinois. In accordance with 28 U.S.C. § 1446, the Notice of Removal has caused this matter to be removed from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois. This Notice includes copies of the Notice of Removal and Notice to Clerk of Removal as attachments.

Respectfully submitted,

**NATIONAL ASSET RECOVERY
SERVICES, INC.**

Donald J. Vogel
Sara L. Pettinger
Scopelitis, Garvin, Light, Hanson & Feary, PC
30 West Monroe Street, Suite 600
Chicago, Illinois 60603
Main (312) 255-7200
Direct (312) 255-7178
Fax (312) 422-1224
dvogel@scopelitis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of July, 2008 served a true and correct copy of the foregoing by depositing the same with the United States Postal Service, first class, postage prepaid, upon the following addressed as follows:

Tracy E. Stevenson
Andrés J. Gallegos
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602

*Attorneys for Plaintiffs*