UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES PLONSKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08cv4033 |
| | ) | |
| NATIONAL ASSET RECOVERY | ) | District Judge Aspen |
| SERVICES, INC. and GREG CAPPA | ) | Magistrate Ashman |
| | ) | |
| Defendants. | ) | |

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Come now Defendants NATIONAL ASSET RECOVERY SERVICES, INC. and GREG

CAPPA, through their attorneys, and pursuant to Federal Rule of Civil Procedure 12(b)(6) file

this Memorandum In Support Of Defendants' Motion to Dismiss.

## I.  SUMMARY OF ARGUMENT

Defendants move to dismiss for failure to state a claim as to all Counts.  Count I fails

because Plaintiff has improperly sued in tort for Conversion to recover purely economic damages

and remedy a breach of contract to recover a nonspecific sum neither of which is permissible.

Count II fails because Plaintiff's allegations of Fraud do not satisfy the heightened pleading

requirements of Fed.R.Civ.P. 9(b), and the claim is premised upon alleged misrepresentations of

future facts and speculative conclusions.  Count III for Breach of Contract fails because the

contract in issue fails to satisfy the Statute of Frauds.  Count IV, which seeks an accounting, fails

as a result of the foregoing.

## II.  STATEMENT OF THE CASE

On June 9, 2008, Plaintiff filed a four Count Complaint against Defendants National Asset Recovery Services, Inc. ("NARS") and Greg Cappa ("Mr. Cappa") which was served upon NARS[1] on June 19, 2008 and was timely removed on July 16, 2008.

In Count I, Plaintiff alleges Conversion because Defendants refused to pay future commissions Plaintiff contends he earned under his Employment Agreement.

At Count II, Plaintiff alleges Fraud contending Defendants misrepresented the conditions under which Plaintiff would work for NARS. Plaintiff contends that NARS hired him representing that it would abide by an "Employment Agreement" that NARS failed to sign and pursuant to which it has allegedly refused to pay commissions due.

At Count III, Plaintiff alleges Breach of Contract contending NARS refused to perform the terms of his Employment Agreement by refusing to continue to pay commissions following Plaintiff's termination of employment per Plaintiff's alleged Employment Agreement with NARS.   Count IV simply seeks an accounting of the sums due.

All Counts must be dismissed with prejudice because they fail to state a claim upon which relief can be granted.

## III. STATEMENT OF THE FACTS

Plaintiff became employed by NARS as a Vice President, Sales, on October 10, 2005. Plaintiff was employed "at-will" and alleges that the principal terms of his employment were outlined in an "Employment Agreement."  Plaintiff contends that he reviewed and signed the Agreement on October 12, 2005; however, NARS never signed this "Agreement". (Complaint ("Compl.") Count I, II and III, ¶¶1-2; "Employment Agreement" at Complaint at Ex. A).

---

[1] This Complaint has yet to be served upon Defendant Mr. Cappa; nevertheless, the grounds for dismissal of this Complaint would apply to his situation as well.  While Mr. Cappa has yet to be served, he voluntarily appeared when the case was removed to this Court.

While employed with NARS, Plaintiff was paid a base salary and pleads that he was entitled to commissions as well. (Compl. Counts I, ¶1, Count II, ¶¶1-6, Count III, ¶1-5)  Plaintiff allegedly earned commissions (at varying rates) on revenue received during the first three years of contracts signed by clients, whom Plaintiff brought to NARS during the six months of his employment (or which were signed during the first year but which had been proposed during his first six months of employment).  The commission payment period, allegedly, was to have lasted for as long as the first three years of a client's contract term. (Compl. Ex. A, ¶1(a)-(d); Count II, ¶¶4-5).  For contracts Plaintiff later negotiated, other commission terms presumably applied. (Compl. Count III, ¶4)

While working for NARS, Plaintiff alleges that he landed what he characterized as NARS' "largest account ever" and brought in revenues "higher than any other" and earned the "highest commissions." (Compl. ¶4)   The "largest account", Charter Communications (misnamed Charter Ltd)("Charter"), resulted in this large commission payout (Compl. ¶7). Plaintiff alleges that he only found one client while working with NARS - Charter (Compl. Count III, ¶12).  Plaintiff alleges that NARS frustrated his attempts to earn a full three (3) years' commissions on the Charter contract because NARS only entered into only a two year deal. (Compl. Count I, ¶4; Count II, ¶¶7- 9). Plaintiff was fired by NARS on May 1, 2008 and it allegedly ceased paying commissions. (Compl. ¶¶5-9)

At Count I, Plaintiff alleges he had earned commissions on future, unbilled Charter revenues, that he was wrongfully discharged without cause so that NARS could end Plaintiff's commission stream and that NARS converted Plaintiff's property by willfully denying him commissions "earned but not yet due." (Compl. Count I, ¶¶5-8).

At Count II, Plaintiff pleads that he was induced to enter into an "Employment Agreement" (Compl. Ex. A) with Defendant based upon promises that he would be entitled to commissions on revenue that NARS received from contracts that Plaintiff obtained with new customers.  Plaintiff contends that NARS fraudulently induced Plaintiff to work with NARS and enter the Agreement because, he alleges, NARS (1) did not execute the Agreement and had no intention to do so and (2) failed to permit Charter to enter into a three year contract but knowingly and intentionally limited the duration of the Charter deal to two years to deny Plaintiff a full three years' commissions on the deal. (Compl. Count II, ¶¶4-9).

At Count III, Plaintiff contends that NARS wrongfully discharged him from employment for which earned commissions are due and owing or will become due and owing in the future and breached the Employment Agreement (Compl. Ex. A) by converting commissions owed, withholding commissions due, devising a written policy intending to convert commissions due Plaintiff and by other wrongful actions.  (Compl. Count III, ¶¶5-8, 12-13)

### III. ARGUMENT

All Counts must be dismissed with prejudice because, assuming Plaintiff's allegations are true, none state a valid claim.

#### A.  Standards For Granting Motions To Dismiss.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corporation,* 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) dismiss, the court accepts as true all well-pleaded facts alleged and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page,* 291 F.3d 485, 486 (7th Cir. 2002).  The Complaint need only give "fair notice of what the ... claim is and the grounds upon

which it rests." *EEOC v. Concentra Health Services, Inc.,* 496 F.3d 773-776-77 (7th Cir. 2007). The factual allegations, however, must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* ___U.S.__, 127 S.Ct. 1955, 1964-65 (2007); *Citadel Group Ltd. v. Sky Lakes Medical Center, Inc.,* No. 06-C-6162, 2008 WL 1924958, *2 (N.D. Ill., April 30, 2008) (Lefkow, J.); *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.,* No. 08 CV 0111, 2008 WL  1883472,*2J (N.D. Ill. April 25, 2008) (Lefkow, J.). If the allegations do not suggest a right to relief, "plaintiff pleads itself out of court." *Concentra, supra,* 496 F.3d at 776.

**B.  Count I Must Be Dismissed Because Conversion May Not Be Asserted<br>to Recover Purely Economic Damages for Breach of Contract.**

Count I improperly attempts to convert a contract claim into a tort action for Conversion. Plaintiff alleges that he was promised commissions on revenues that NARS earned from contracts he brought to NARS and that his entitlement extended over a three year period after the contracts were signed with commissions having been earned when a customer executed a contract.  He then pleads that when NARS terminated him, it owed him commissions for future periods and NARS has refused to pay commissions that he has earned and are, or will become, due.  Thus, NARS allegedly breached its "contract" by not continuing to pay Plaintiff commissions – unspecified amounts of commissions at that.  From this, Plaintiff pleads Defendant "converted assets belonging to the Plaintiff…in that Defendant willfully denied Plaintiff earned but not yet due commissions, thus depriving Plaintiff of his personal property…"

1.  Count I Barred by Economic Loss Doctrine.

Plaintiff's tort claim is barred by the "economic loss" doctrine which prohibits a tort claim to recover only lost profits or "purely economic damages," such as commissions, or to vindicate "defeated economic expectations." *See e.g., Kiswani v. Phoenix Security Agency, Inc.,*

247 F.R.D. 554, 558 (N.D. Ill, 2008) *citing In re Illinois Bell Switching Station Litigation,* 161

Ill.2d 233, 204 Ill.Dec. 216, 641 N.E.2d 440,443 (Ill. 1994)[2].

Under the "economic loss" doctrine, claims for lost profits, without personal injury or

damage to other property, are not recoverable in tort. *American United Logistics, Inc. v. Catellus*

*Development Corp.,* 319 F.3d 921, 926 (7th Cir. 2003).  Because "the economic consequences of

any single accident are virtually limitless," the doctrine is designed to prevent open-ended tort

liability.  *In re Chicago Flood Litigation,* 176 Ill.2d 179, 223 Ill.Dec. 532, 680 N.E.2d 265, 274

(Ill. 1997).  Rather, contract law is the appropriate remedy for recovering purely economic losses

arising from disappointed commercial expectations with a tort remedy being unavailable[3].

*Moorman Mfg. Co. v. National Tank Co.,* 91 Ill. 2d 69, 61 Ill. Dec. 746, 435 N.E.2d 443, 450

(Ill. 1982); *In re Illinois Bell Switching,* 204 Ill. Dec. 216, 641 N.E.2d at 444.  *American United*

*Logistics, Inc., supra,* 319 F.3d at 926; *Mutual Service Casualty Ins. Co. v. Elizabeth State Bank,*

265 F.3d 601, 615 (7th Cir. 2001); *Security First Network Bank v. C.A.P.S.,* No. 01 C 342, 2002

WL 485352, *8 (N.D. Ill. Mar. 29, 2002)(Lefkow, J.)[4].

Even though the doctrine has its genesis in products liability, its application extends to

provision of services as well. *See Mutual Service Casualty Insurance Co., supra,* 265 F.3d at

---

[2] Defendants have briefed this argument based upon application of Illinois and 7th Circuit caselaw.  Should this Court, or Plaintiff, conclude that Missouri law should apply, the "economic loss doctrine" is not uniquely a creature of the courts of Illinois and the 7th Circuit.  Missouri law is substantially identical with its courts recognizing the same "economic loss" doctrine with the courts' refusing to permit tort claims to recover strictly economic loss or vindicate "defeated economic expectations."  *See e.g., Wilbur Waggoner Equipment and Excavating Co. v. Clark Equipment Co.,* 668 S.W.2d 601, 603 (Mo.App. E.D. 1984) and cases cited therein.

[3] The Illinois Supreme Court has recognized only three exceptions to the economic loss rule where the damages are personal or property damage: (1) damages resulted from sudden or dangerous condition; (2) injury was proximately caused by a defendant's intentional, false representation, i.e. fraud; and (3) injury was caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.  *In re Chicago Flood Litigation, supra,* 223 Ill.Dec. 532, 680 N.E.2d at 275. (explaining *Moorman*).

[4] This is the case even if Plaintiff cannot recover under an action in contract.  *Anderson Electric, Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246, 249 (Ill. 1986); *Kiswani, supra, citing In re Chicago Flood Litigation, supra,* 223 Ill.Dec. 532, 680 N.E.2d at 275.

615; *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.,* 159 Ill. 2d 137,

201 Ill. Dec. 71, 636 N.E.2d 503, 523-14 (1994), *cert. denied,* 513 U.S. 947; *Collins v. Reynard,*

154 Ill.2d 48, 180 Ill. Dec. 672, 607 N.E.2d 1185, 1187-88 (Ill. 1992)("… the economic loss

…doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed

contractual or commercial expectations.").  This District routinely dismisses tort claims brought

to obtain solely economic damages to remedy "defeated expectations of a commercial bargain[5]."

>    2.    Conversion Is Inappropriate to Recover Unspecified Sums or to Recover a General
> Obligation to Pay Money Damages.

To recover for Conversion, Plaintiff must show: (1) a right to specific property; (2) an

absolute and unconditional right to **immediate** possession; (3) a demand for possession; and (4)

defendant's wrongful assumption of control, dominion, or ownership. *Van Diest Supply Co. v.*

*Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005); *Cirrincione v. Johnson,* 184 Ill.2d

109, 234 Ill. Dec. 455, 703 N.E.2d 67, 70 (1998).

For a Conversion claim to be cognizable, however, specifically identifiable property must

be the subject.  *Shapo v. O'Shaughnessy,* 246 F.Supp. 2d 935, 967 (N.D. Ill. 2002); *Cumis Ins.*

*Society, Inc. v. Peters,* 983 F.Supp. 787, 793 (N.D. Ill. 1997).  Actions for the Conversion of

money, therefore, are limited and an action for Conversion generally may not be maintained to

satisfy a mere obligation to pay money.  *In Re Thebus,* 108 Ill.2d 255, 91 Ill.Dec. 623, 483

N.E.2d 1258, 1260-1261 (Ill. 1985).  In limited circumstances, an action for Conversion of

money may be made but only if the plaintiff has a "right to a specific fund or specific money in

---

[5] *See e.g., National Production Workers Union Insurance Trust v. Cigna Corp.,* No. 05 C 5415, 2006 WL 140544, *3 (N.D. Ill. Jan 13, 2006); *American National Bank and Trust Co. of Chicago ex rel. Emerald Investments,* No. 00 C 6786, 2001 WL 743399, *14 (N.D. Ill. June 29,2001)(Claim for conversion challenging impropriety of defendant's imposition of $2 million surrender fee dismissed under economic loss doctrine. Court held that "Application of the doctrine is particularly prudent where, as here, the success or failure of the claim turns on an interpretation of the contract(s) between the parties.")

coin or bills," *Mid-America Fire & Marine Ins. Co. v. Middleton,* 127 Ill.App.3d 887, 82 Ill.Dec. 455, 468 N.E.2d 1335, 1339 (Ill. 1984), or if the money is part of a specified identifiable fund, *Thebus, supra,* 91 Ill.Dec. 623, 483 N.E.2d at 1260, that is "capable of being described, identified, or segregated in a specific manner." *Turtle Wax, Inc. v. Zymol Enterprises, Inc.,* No. 04 C 2086, 2006 WL 335797, \*2-3 (N.D. Ill., Feb. 13, 2006); *Independent Trust Corporation v. Fidelity National Title Insurance Company of New York*, No. 05 C 5749, 2007 WL 1017858 (N.D. Ill. Mar. 30, 2007). But a mere claim of right to an indeterminate sum of money sounds in debt and is not cognizable in Conversion. *Turtle Wax, Inc., supra; 3Com Corp. v. Electronic Recovery Specialists, Inc.,* 104 F.Supp. 2d 932, 940 (N.D. Ill. 2000).

Plaintiff cannot satisfy these requirements.  He has not pleaded entitlement to any specific, identifiable or segregated sum of money nor that Defendants are holding separate, identifiable sums received for Plaintiff from others. Plaintiff has simply alleged that pursuant to his Employment Agreement with Defendants, they owe him unpaid commissions, i.e. a debt, on sales made by NARS.  This is not a claim of right to a specific, identifiable sum and does not state a claim for conversion.

Moreover, Plaintiff claims for commissions that have been earned but are not yet due!! (Compl. Count I, ¶6; Count III, ¶¶5-7)  Such sums cannot possibly be subject to a claim of Conversion because there is not yet an immediate right to possession or the ability to identify specific property.

Decisions of the District Courts in Illinois are in complete accord. *See e.g., Turtle Wax, Inc., supra,* 2007 WL 335797, 1-2 (Plaintiff entered into royalty agreement with defendant providing that defendant would pay royalties based upon defendant's sales of product under trademark agreement with plaintiff; plaintiff sued in conversion for unpaid royalties and the

claim was dismissed as simply a demand for payment of a debt for profits under a contract and did not allege a right to a specific, identifiable sum); *R.E.I. Transport, Inc. v. C.H. Robinson Worldwide, Inc.,* No. 05-57-GPM, 2007 WL 854005 (S.D. Ill. Mar. 16, 2007)(Plaintiff performed cartage services for defendant who withheld certain sums from cartage fees owed plaintiff. Plaintiff brought a conversion claim which was dismissed because it was simply a demand for payment for work performed under the cartage contract). *Doing Steel, Inc. v. Castle Construction Corporation,* No. 02 C 1674, 2002 WL 31664476 (N.D. Ill. Nov. 21, 2002)(Plaintiff subcontractor brought conversion claim against general contractor for payment for services under construction subcontract. Conversion claim dismissed because it simply sought payment from the general for performance; the sums did not always belong to plaintiff but were payable only after being earned); *3Com Corp. v. Electronic Recovery Specialists, Inc., supra,* 104 F.Supp.2d at 939-40 (Plaintiff alleged defendant breached its contract with plaintiff by paying less for scrap than was owed under scrap marketing deal; plaintiff's demand in conversion for the proper percentage of resale value was dismissed because this was just a nonspecific, demand for a percentage of scrap value and plaintiff (like Plaintiff here) could not allege a specific sum that had a specific source that had been segregated, earmarked or was identifiably distinct)[6].

### C. Count II Fails Because the Fraud Claim is not Pleaded with Sufficient Specificity and is Based on Representations of Future Intentions.

Count II should be dismissed for two separate reasons. First, Plaintiff's allegations of fraud are not sufficient because the allegations lack sufficient specificity, particularity and

---

[6] Should this court consider Missouri law, the result is the same. *See e.g. Emerick v. Mutual Benefit Life Ins. Co.,* 756 S.W.2d 513, 525-26 (Mo. 1988)(Claim in Conversion to recover commission revenue under brokerage contract dismissed.) *Estate of Boatright,* 88 S.W. 3d 500, 506 (Mo. App. S.D. 2002)(Money represented by general or ordinary debt not subject to claim for conversion); *Dwyer v. Unit Power, Inc.,* 965 S.W.2d 301, 305-06 (Mo. App. E.D. 1998).

certainty required to apprise NARS of what it is called upon to answer. Second, Plaintiff's fraud claim is premised upon alleged misrepresentations of future facts which did not even arguably exist when the alleged fraud occurred.

In Count II, Plaintiff alleges NARS fraudulently induced Plaintiff to accept employment by representing that it would enter into an employment agreement under which Plaintiff would be paid a three year stream of commissions. Plaintiff claims that when he entered into this alleged agreement Defendant knew that **in the future**: (1) it would not sign the agreement, (2) it would enter into a contract with a future customer, Charter, which would be shorter in duration than the maximum possible commission stream permitted in the alleged employment agreement[7], and (3) NARS would not honor the alleged employment agreement. As relief, Plaintiff seeks commissions which Plaintiff contends have been earned, but are not due (Compl. Count III, ¶ 6).

Black letter Illinois law requires that to protect against baseless complaints, a Plaintiff alleging fraud must plead the facts of the fraud with sufficient specificity, particularity and certainty to advise the opposing party of what it is called upon to answer. *The Board of Education of the City of Chicago, et al. vs. AC&S, Inc. et al.*, (1989), 131 Ill. 2d 428, 457, 546 N.E. 2d 580, 137 Ill. Dec. 635. *See also, Horan v. Blowitz* (1958), 13 Ill. 2d 126, 133, 148 N.E. 2d 445; *People ex rel. Callahan v. Gulf, Mobile and Ohio R.R. Co.,* (1956), 8 Ill. 2d 66, 70-71, 132 N.E. 2d 544. This requirement, of course, is mirrored as well in the Fed.R.Civ.P. 9(b).

Plaintiff must specifically plead the elements of fraud, i.e. the exact misrepresentations allegedly made, when they were made, the individual(s) who made them and to whom such

---

[7] Note that the alleged Employment Agreement **does not state** that all contracts that customers entered into with NARS **must be** of at least three years duration**.**

misrepresentations were made. *AC&S, Inc. supra.* at 457. Of course, federal law in this Circuit is identical[8].

Contrary to the foregoing pleading requirements, Plaintiff's Complaint fails to do this. Instead, Plaintiff generally alleges that "NARs and its employees and agents failed to sign the Employment Agreement and failed to permit the client, Charter Ltd. from entering into a contract of sufficient duration to allow payment of commission through the third year of each contract and, instead, intentionally and knowingly misrepresented that the commissions would be paid for three years and intentionally limited the duration of contracts with clients so as to prohibit the payment of commissions as they became due." (Compl. Count II, ¶7) Plaintiff does not identify the specific individual who allegedly fraudulently failed to sign the Employment Agreement and fails to identify specifically who failed to permit Charter from entering into a three year contract. Although Plaintiff's Fraud claim is premised upon NARS alleged failure to allow Charter to enter into a three year contract, the Complaint fails in a critical aspect: it does not identify who prohibited Charter from entering into this contract and when the fraudulent act occurred.

Accordingly, Count II of Plaintiff's Complaint must be dismissed as being insufficiently specific. *AC&S, Inc. supra.*

Moreover, Count II must be dismissed because the fraud alleged is based upon future promises or intentions, and not on present or past facts or conditions. To establish a *prima facie* case of fraudulent misrepresentation, Plaintiff must establish "a representation in the form of a statement of a material fact, made for the purpose of inducing a party to act; it must be false and

---

[8]To satisfy the pleading standards of Fed.R.Civ.P. a party alleging fraud must "at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the representations and to whom they were made." *In re Comdisco Ventures, Inc.,* No. 04 C 2007, 04 C 2393, 2005 WL 1377856 at *9 (N.D. Ill. June 8, 2005); *Menard, Inc. v. U.S. Equities Development, Inc.*; No. 01 C 7142, 2002 WL 31050160 at *6 (N.D. Ill. Sept. 13, 2002); *Rolfing v. Manor Care, Inc.,* 172 F.R.D. 330, 347 (N.D. Ill. 1997); *Wright v. Nissan Motor Corp. U.S.A.,* 96 C 8015, 1997 WL 106101 at *2 (N.D. Ill. Feb. 10, 1997).

known by the party making it to be false, or not actually believed by him, on the reasonable

grounds, to be true; and a party to whom it is made must be ignorant of its falsity, must

reasonably believe it to be true, must act thereon to his damage, and in so doing must rely on the

truth of the statement." *Wilkinson v. Appleton,* (1963), 28 Ill. 2d 184, 187-188, 190 N.E. 2nd 727,

729-730.

Further, it is well settled that actions for fraud must be based on present conditions or

past acts, not upon future promises or intentions and a claim of fraud does not derive from a

**promise** to perform an action, accompanied by an intention not to perform that act. *Capalbo v.*

*Paine Webber, Inc.*, 672 F.Supp. 1048, 1052-1053 (N.D. Ill. 1987); *Hurley v. Frontier Motors*

*Inc.*, 12 Ill. App. 3d 905 (3d Dist. 1973). Accordingly, Plaintiff's allegations that Defendant

never intended to sign the Employment Agreement while offering employment under it or that

Defendant never intended to permit three year customer contracts are not actionable.

Defendants recognize the exception that an action for fraud lies where the false promise

or representation of future conduct is alleged to part of a scheme to accomplish the fraud.

*Steinberg v. Chicago Medical School*, (1977) 69 Ill. 2d 320, 334, 371 N.E. 2d 634. This

exception, however, is not applicable.

Here, it is clear from Plaintiff's Complaint that the Fraud claim is based upon alleged

promises to perform actions, accompanied by an alleged intention not to do so. Specifically,

Plaintiff claims that he agreed to work for Defendant based upon Defendant's alleged promise to

enter into an Employment Agreement with specific terms as to commissions and NARS then: (1)

failed to sign the Agreement and (2) prohibited a future customer, Charter, from contracting in a

manner to permit a three year commission stream. Plaintiff's allegation of fraud derives from

Defendant's alleged promise to act accompanied by an intention not to act. Plaintiff cannot

argue his Fraud claim falls within the "fraudulent scheme" exception because no such scheme could have existed. This is because the relationship that Plaintiff contends formed the basis of the fraud, the contract with Charter, was not yet contemplated by the parties. Plaintiff alleges that **he** developed a relationship with Charter and the Charter business did not exist when Plaintiff started with Defendant.

Thus, Defendant's failure to sign the alleged Employment Agreement and alleged failure to have permitted Charter to have entered into a three year deal could not possibly have been part of a scheme to defraud Plaintiff out of commissions since the Charter business did not exist when Plaintiff commenced employment.

### D. Count III Must Be Dismissed Because the Employment Agreement Does Not Satisfy the Statute of Frauds.

In Count III, Plaintiff pleads an entitlement to commissions on revenues recognized by NARS, generated from contracts that he sourced for NARS, for a period of three years after the customer signs the contracts. These commissions on future revenues are allegedly earned when the customer signs the initial contract. Plaintiff would argue that no conditions exist – and certainly not his termination of employment – which would "defease" this entitlement to future revenues. Instead, Plaintiff pleads the existence of a multiyear contract with Charter as the basis for his compensation demand. Accordingly, Plaintiff contends that the "Employment Agreement" creates an entitlement to commissions. However, by its alleged terms, the Employment Agreement cannot be performed within one year.

Under Missouri law[9], the Statute of Frauds provides:

---

[9] Defendants note that because the Employment Agreement that Plaintiff pleads as the foundation for his Breach of Contact claim has a Missouri choice of laws provision (Compl. Ex. A, ¶13), Defendants analyze this claim under Missouri law. The Illinois Statute of Frauds, 740 ILCS 80/1, however, is not different in any material respect from Missouri's statute; thus, the analysis under Illinois law would proceed similarly.

"No action shall be brought …upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith….

Mo.Rev.Stat. §432.010.  In this case, the Employment Agreement upon which Plaintiff relies for Count III, is not signed by the party to be charged with performance and payment -- NARS. Since the contract cannot by its terms be performed within one year and has not been signed by "the party to be charged therewith," it is not enforceable[10].

Instructive and factually indistinguishable from this case is *Vess Beverages, Inc. v. Paddington Corp.,* 886 F.2d 208 (8th Cir. 1989).  There, plaintiff Vess sought to enforce an oral contract for sale of a Paddington product line – its wine cooler business.  Paddington refused to close the sale contending the statute of frauds prevented enforcement of the contract even though all terms had been reduced to writing. *Id.* at 211. One of the terms, however – like Plaintiff's alleged commission arrangement here – provided that Vess must pay royalties on all cases of wine coolers that Vess might sell for a two year period following the date of sale.  *Id.* at 212.  In spite of arguments by Vess that such an promise was outside of the Statute of Frauds (because Vess could pay the royalty earlier in a single sum or that Vess might not sell any wine coolers for a period beyond one year), the court held that this was a contract that could not be performed within one year. *Id* at 213. Such, obviously, is also the case here.

Plaintiff attempts to avoid the Statute by pleading that he has fully performed all duties under his Employment Agreement; thus, his entitlement to commissions would be an "executed" contract and no longer within the Statute of Frauds.   (*See e.g.,* Compl. Count III, ¶14)  This is incorrect.  Regardless of the fact that claims for damages such as Plaintiff's cannot be removed

---

[10] Defendants recognize precedent suggesting that fraud may be a basis to remove a contract from the Statute of Frauds; however, given the failure of Plaintiff's Count II for fraud, as noted above, no further discussion is necessary on this point.

from the Statute based upon partial performance[11], Paragraphs 8, 9 and 10 of the "Employment Agreement" outline extensive obligations owed by Plaintiff to NARS for a period of one year **after** his termination of employment such as non-solicitation of NARS' employees, non-disclosure of NARS' confidential information, and non-solicitation of NARS' customers. These are continuing obligations which have not yet been performed (since Plaintiff was terminated on May 1, 2008) and which establish that this arrangement is subject to the Statute of Frauds because they also create obligations which by their terms cannot be performed within one year. *See e.g. Genin, Trudeau & Co., Ltd. v. Integra Development International,* 845 F.Supp. 611, 616 (N.D. Ill. 1994)(Noncompete agreement with 18 month duration could not have been performed within one year of its making); *Solia Technology LLC v. Arvinmeritor, Inc.,* 02 C 4704, 2006 WL 695699, *11 (N.D. Ill. Mar. 16, 2006)(Covenant not to sue which does not expire within one year is subject to Illinois Statute of Frauds); *Schaadt v. St. Jude Medical S.C. Inc.,* No. 05-CV-1167, 2007 WL 2331953, *2 (D. Minn. Aug. 14, 2007) (Commitment not to solicit employer's employees for a year after termination resulted in contract being within Statute of Frauds).

As such, Count III must be dismissed.

Respectfully submitted,

Defendants, NATIONAL ASSET RECOVERY SERVICES, INC., and GREG CAPPA

By:    /s/ Donald J. Vogel
One of Their Attorneys

---

[11] *See e.g. Pemberson v. Ladue Realty & Const. Co.,* 244 S.W.2d 62, 64 (Mo. 1951) and *McCoy v. Spelman Memorial Hospital,* 845 S.W.2d 727, 731 (Mo. App. W.D. 1993) as to partial performance and *Trimmer v. Short,* 492 S.W.2d 179, 183 (Mo. App. 1973) as to complete performance.  Likewise, early termination of a sales consulting agreement does not convert partial performance into full performance for purposes of the Statute of Frauds.  *Sales Service, Inc. v. Daewoo International,* 770 S.W. 2d 453, 456 (Mo. App. E.D. 1989). Illinois law is in accord.  *Trustmark Ins. Co. v. General & Cologne Life Re of America,* 424 F.3d 542, 551-52 (7th Cir. 2005).

THE LOWENBAUM PARTNERSHIP
Stanley G. Schroeder, app. Pending
William L. Lawson, app. Pending
222 South Central Avenue, Suite 901
St. Louis, Missouri 63105
Main (314) 863-0092
Direct (314) 746-4835
(314) 746-4848 (facsimile)
sschroeder@lowenbaumlaw.com
wlawson@lowenbaumlaw.com

SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
Donald J. Vogel, ARDC # 6191438
Sara L. Pettinger, ARDC # 6204647
30 West Monroe Street
Suite 600
Chicago, Illinois 60603
Main(312) 255-7200
Direct(312) 255-7178
Fax (312) 422-1224
dvogel@scopelitis.com

Attorneys for Defendants National Asset
Recovery Services, Inc. and Greg Cappa

109373.1

16

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 30th day of July, 2008 served a true and correct copy of the foregoing through the electronic case filing system of the United States District Court for the Northern District of Illinois to the following counsel:


Tracy E. Stevenson
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602


and via First Class U.S. Mail to:


Andres J. Gallegos
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602


/s/Donald J. Vogel

109373.1

17